## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| | ) | |
| BRENDAN HOOVER, | ) | |
| | ) | CIVIL ACTION NO. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT** |
| | ) | **AND JURY CLAIM** |
| HYATT HOTELS CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### INTRODUCTION

The Plaintiff, Brendan Hoover, brings this premises liability action against Defendant Hyatt Hotels Corporation to recover for brain injuries he suffered in a hotel when a freight elevator gate, lacking a critical sensor, closed on him and crushed his head into equipment cases.

### THE PARTIES

1.      Plaintiff Brendan Hoover ("Plaintiff" or "Hoover") is a Massachusetts citizen and currently resides in Everett, Massachusetts.

2.      Defendant Hyatt Hotels Corporation ("Defendant" or "Hyatt") is a corporation organized under the laws of Delaware, and with a principal office at 150 North Riverside Plaza, Chicago, Illinois 60606.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction under 28 U.S.C. §1332 because there is complete diversity of the parties and the amount in controversy exceeds $75,000.00.

4.      This Court has venue under 28 U.S.C. §1391(b)(3) because this is a jurisdiction in which Defendant is subject to the Court's personal jurisdiction.

## FACTUAL BACKGROUND

5.     Hoover, age 35, worked for CCR Solutions, Inc. ("CCR"), in its Walpole, MA location, from October 31, 2019 to March 12, 2020.  CCR is in the business of providing audio and visual ("AV") equipment and services for large events.

6.     Hoover worked as an audio visual consultant for CCR, and, as part of his job, frequently traveled around the country to assist with the set-up of AV equipment for conventions organized by CCR clients.

7.     In late February 2020, Hoover was sent by CCR to Seattle, WA to work on a job for client Global Food Safety Initiative at an event being held at the Hyatt Regency Bellevue, located at 900 Bellevue Way NE, Bellevue, WA 98004 (the "Hotel").

8.     On information and belief, prior to the event, the Hotel hosted CCR for a site visit to determine the best strategy for setting up the AV equipment.  Furthermore, on information and belief, there were numerous communications between the Hotel and CCR where the Hotel promoted its space as suitable for the event.[1]

9.     On February 25, 2020, around 10:00 P.M., Hoover was working on site at the Hotel. Hoover was transporting cases of AV equipment from a freight elevator when, unexpectedly, an alarm rang and the elevator gate came down from above and crushed his head against the equipment cases.

10.     Hoover immediately experienced extreme head and neck pain, as well as blurry vision.  After Hoover regained his bearings, he went to his boss, Ed Harrison, the on-site manager for CCR, to report the incident.  Hoover thereafter returned to the Bed and Breakfast where he was staying during the trip to rest and see if the pain would alleviate.

---

[1] The allegations in Paragraph 8 are pled "on information and belief" because these actions were ordinary business practices of CCR for out of state projects, but only the Hotel and CCR can confirm they occurred in this instance.

11.     Hoover returned to the Hyatt on the morning of February 26th, but the pain intensified.  He took an Uber to the Emergency Room at Overlake Medical Center in Bellevue, WA.  At the ER, Hoover was seen by trauma neurologists, who ordered CT scans and further evaluation.

12.     The ER doctors confirmed that Hoover had a clenched basilar artery constricting oxygen to his brain.

13.     Hoover returned to his room at the B&B, where he remained in the dark and at rest to reduce symptoms, but he was unable to sleep.

14.     Hoover next returned to the Hotel on February 28, 2020 to see if the sensor in the elevator had been installed, and, if not, to warn others of the hazard. The elevator that caused Hoover's injury was shut down for repairs on the February 28th and issue with the sensor was corrected that same day.

15.     Hoover then experienced intense headaches and had to leave and return to his B&B.

16.     On February 29, 2020, Hoover flew home to Massachusetts.

17.     Hoover attempted to return to work the following week, but he was not able to do any real work because he experienced severe pain and could no longer lift weight.

18.     Approximately two weeks after returning to Massachusetts, Hoover received a call from Timothy Stolmeier, an agent of the elevator maintenance company that services the Hotel. Mr. Stolmeier told Hoover that a sensor had not been working in the freight elevator, but that only one of two safety mechanisms had to be working at one time, and since the other was working, the elevator was appropriately maintained.

19.     On March 12, 2020 Hoover was laid off by CCR.  Hoover consequently lost his health insurance, which had been provided through CCR.

20.     Hoover continues to receive medical treatment for his brain injury from neurologists at Mass General Hospital.  In addition, Hoover is enrolled in a program for traumatic brain injuries at Boston University.

21.     Despite receiving ongoing treatment, Hoover continues to experience severe headaches, and has difficulty focusing and completing tasks.  Hoover also has difficulty with screen time.

22.     Hoover is currently unemployed due to his head trauma, and it remains unclear if and when he will be able to return to work.

## COUNT I – NEGLIGENCE

23.     Hoover incorporates by reference the foregoing paragraphs as if fully set forth herein.

24.     As owner of the premises on which the freight elevator was located, Hyatt has a common law duty of reasonable care to all persons lawfully on its premises, and to maintain the elevator in a safe condition.

25.     The freight elevator was unsafe in that it lacked a working sensor to prevent the gate from crushing individuals exiting the elevator.

26.     Hyatt had actual or constructive notice that the freight elevator lacked a critical sensor.

27.     As a direct and proximate cause of the defective condition of the freight elevator, Hoover suffered a substantial brain injury and remains at a limited capacity to engage in work or normal life activities.

## PRAYER FOR RELIEF

The Plaintiff requests the following relief:

A.    Compensatory damages, including for medical treatment, pain and suffering and loss of earning in an amount to be determined after trial;

B.    Costs and expenses incurred in pursuing these claims; and,

C.    Any other relief that the Court deems just and proper.

### *PLAINTIFF DEMANDS A JURY ON ALL COUNTS TRIABLE*

Respectfully Submitted,
**BRENDAN HOOVER**
By his attorneys,

*/s/ John A. Mangones_____*
John A. Mangones, BBO#676107
**GODBOUT LAW PLLC**
33 Broad St., 11th Floor
Boston, MA 02109
617-523-6677
john@bjgalaw.com

Dated: August 3, 2020